UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PRISCILLA JIBOWU, Individually and on
Behalf of All Other Persons Similarly Situated,

                      Plaintiff,　　　　　　**MEMORANDUM & ORDER**
　　　　　　　　　　　　　　　　　　　　17-CV-3875 (PKC) (MMH)
       - against -

TARGET CORPORATION and TARGET
CORPORATION OF MINNESOTA,

                      Defendants.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Priscilla Jibowu ("Plaintiff Jibowu" or "Jibowu"), individually and on behalf of all other persons similarly situated (collectively, "Plaintiffs"), brought this collective action under the Fair Labor Standards Act ("FLSA") against Defendants Target Corporation and Target Corporation of Minnesota (collectively "Defendants") alleging overtime violations pursuant to the FLSA, New York Labor Law ("NYLL"), Illinois Minimum Wage Law ("IMWL"), and Illinois Wage Payment and Collection Act ("IWPCA"). Before the Court is Plaintiffs' motion to transfer venue to the District of Minnesota due to developments in a related case before that court, *Babbitt v. Target Corp.*, No. 20-CV-0490 (DWF) (ECW) (D. Minn.). For the reasons stated below, Plaintiffs' motion is granted.

## BACKGROUND[1]

### I.　Factual and Procedural History

Defendant Target Corporation ("Target") is a national retailer that operates approximately 1,800 stores nationwide, with stores in each of the 50 states. (Summ. J. Mem. & Order, Dkt. 129,

---

[1] The Court assumes the parties' familiarity with the facts of this case and only recounts those facts that are relevant to the instant motion. The Court has previously provided a detailed

at 2.) Each Target store has two salaried managerial positions: the senior-most Store Team Leader ("STL"), and some number of Executive Team Leaders ("ETLs"). (*Id.*) Target classifies ETLs as exempt executives/administrators for purposes of the FLSA and state labor laws. (*Id.*) Plaintiff Jibowu, who worked as an ETL for Target in their Chicago and Brooklyn stores, (*see id.* at 4), commenced the instant action on June 28, 2017, alleging that Target improperly classified Plaintiff Jibowu as an exempt executive under the FLSA, NYLL, IMWL, and IWPCA, (*see* Compl., Dkt. 1, ¶¶ 1–3, 33). On September 6, 2019, Target moved for summary judgment on these claims, arguing that there was no genuine dispute that Plaintiff Jibowu's ETL roles fell within the *bona fide* executive exemption to overtime pay and that she was properly compensated for the hours she worked above 40 per week. (Summ. J. Mem. & Order, Dkt. 129, at 6.) On September 30, 2020, the Court denied Defendants' motion for summary judgment and granted Plaintiff Jibowu and the seven other opt-in Plaintiffs' motion for conditional certification as a collective action under the FLSA, defining the collective as the following:

> [C]urrent and former Food ETLs, Sales Floor ETLs, Softlines ETLs, Hardlines ETLs, Guest Experience ETLs, Replenishment ETLs, and Logistics ETLs in stores that do not have Replenishment ETLs, employed by Defendants at the Target store locations within California, Illinois, New York, Ohio, Oklahoma, Pennsylvania, and Texas, at which Plaintiff Jibowu or the opt-in Plaintiffs worked, at any time from June 28, 2014 to the present.

(*Id.* at 62.) By March 2022, the case was well into second-stage discovery, and the class was comprised of Plaintiff Jibowu and 34 opt-in Plaintiffs. (*See generally* Def. Second Suppl. Disclosures, Dkt. 191-2.) A few months later, in June 2022, Defendants filed a consent motion to stay the case. (Dkt. 181.) In its motion, Defendants informed the Court that "an action [was]

---

description of the procedural history and claims in this case in its Memorandum & Order denying Defendants' summary judgment motion. (Summ. J. Mem. & Order, Dkt. 129); *see also Jibowu v. Target Corp.*, 492 F. Supp. 3d 87 (E.D.N.Y. 2020).

currently pending in the U.S. District Court for the District of Minnesota, [No. 20-CV-0490], in which plaintiff asserts the same FLSA claim against Target." (*Id.* at ECF 1.[2]) Defendants further stated that "the parties agree that the *Babbitt* conditionally-certified collective will likely overlap significantly with the collective conditionally certified in *Jibowu*, which consists of 35 current and former Target ETLs who worked at covered stores in California, Illinois, New York, Ohio, Oklahoma, Pennsylvania, and Texas, at any time from June 28, 2014 to the present, and who filed consent forms to participate in the *Jibowu* lawsuit." (*Id.* at ECF 2.) At the same time, Defendants noted that "the extent of the overlap in the conditionally certified collectives and discoverable material cannot be determined until after the disposition of the Rule 72 Motion in Target's favor or the close of the notice and opt-in period in *Babbitt* (as applicable)." (*Id.*) On June 2, 2022, the Court granted the parties' motion to stay the case, (*see* 6/2/2022 Dkt. Order), after which the case remained stayed for over two years pending developments in *Babbitt*.

Following several joint status reports from the parties, on July 3, 2024, Plaintiffs requested that the Court lift the stay and allow the parties to engage in motion practice on the issue of whether the case should be transferred to the District of Minnesota. (Joint Status Report, Dkt. 188.) The Court granted Plaintiffs' request. (7/11/2024 Dkt. Order.) Plaintiffs subsequently filed their motion to change venue on August 5, 2024. (Pls.' Mem. Supp. Mot. Transfer Venue, Dkt. 189-1 ("Pls.' Mem."), at 13.) Defendants filed their opposition on September 11, 2024. (Defs.' Opp'n, Dkt. 190 ("Defs.' Opp'n"), at 26.) Plaintiffs filed their reply, and this motion was fully briefed, on September 25, 2024. (Pls.' Reply, Dkt. 191 ("Pls.' Reply"), at 10.)

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

## II. The *Babbitt* Case

*Babbitt* is a 2020 collective action brought against Defendant Target in the District Court of Minnesota by named plaintiffs Tammy Babbitt and William Carter.[3] *See Babbitt*, No. 20-CV-0490, Dkt. 1. Plaintiffs in *Babbitt* worked as ETLs in Target stores and alleged that Target misclassified them as exempt employees under federal and state overtime laws and failed to pay them overtime, in violation of the FLSA. *Id.* On March 28, 2022, Magistrate Judge Elizabeth Cowan Wright issued a report and recommendation ("R&R") in *Babbitt* that recommended granting conditional certification of a nationwide collective of ETLs. (Decl. of Sara B. Tomezsko Opp'n Pls.' Mot., Dkt. 190-25 ("Tomezsko Decl."), ¶ 2.) On August 24, 2022, District Judge Donovan W. Frank adopted the R&R over Target's objections. (*Id.*) The *Babbitt* court conditionally certified the following collective:

> All current and former Executive Team Leader[s] (ETLs) however variously titled, excluding the ETL Human Resources position, the ETL Asset Protection position, the ETL Remodel position, and the Logistics ETL position in stores that have Replenishment ETLs, who worked for [Target] in the United States at any time on or after July 20, 2018.

(*Id.* ¶ 3.) In March 2023, a third-party administrator started sending out notices of the conditional certification order to the *Babbitt* collective, with the last opt-in deadline set at December 9, 2023. (*Id.* ¶¶ 5–6.) The scheduling order adopted in January 2024 stated that "[a]ll non-dispositive motions and supporting documents, including those that relate to sample fact discovery, shall be filed and served" by June 14, 2024, after which the second discovery phase would commence. *See Babbitt*, No. 20-CV-0490, Dkt. 363, at 4.

---

[3] The District of Minnesota action was originally brought by Andrew Davis, who later withdrew, with Babbitt and Carter substituting in his place. *See Babbitt*, No. 20-CV-0490, Dkt. 46.

4

Though *Babbitt* was originally brought by different lawyers, Plaintiffs' counsel in this case started representing the *Babbitt* plaintiffs in late 2020. (*See* Pls.' Reply at 7–8 n.5 ("*Babbitt* was filed entirely independently of this case by other lawyers and the counsel in the two cases only later agreed to work together.")); *see also Babbitt*, No. 20-CV-0490, Dkts. 29, 31 (Orders granting Mots. for Admis. Pro Hac Vice for Att'ys Predovan, Timmel, Rudich, Lesser, and Gershbaum). Following the grant of conditional certification in *Babbitt*, two individuals who joined the *Jibowu* case as opt-in Plaintiffs—Bertram Pryce and Kyla Cushman—also opted into *Babbitt*. (Pls.' Mem. at 1–2.)

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Under this statute, transfer is appropriate where (1) the plaintiff could have originally brought the case in the transferee forum, and (2) the balance of convenience and justice favors transfer." *Buccafusco v. Resorts Casino Hotel Atl. City*, No. 20-CV-5687 (PKC) (LB), 2021 WL 2661256, at *2 (E.D.N.Y. Jan. 6, 2021) (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010)). Once it is established that a plaintiff could have originally brought the action in the transferee court,[4] courts typically determine whether the case should be transferred by weighing the following nine factors:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's

---

[4] Here, there is no dispute that Plaintiff Jibowu could have originally brought the case in the District of Minnesota since Defendant Target is headquartered there. (*See* Pls.' Mem. at 4–5; Defs.' Opp'n at 7.)

5

> familiarity with the governing law; (8) the weight accorded the plaintiff[']s choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Rimler v. Ripple Junction Design Co.*, No. 19-CV-5953 (PKC) (CLP), 2020 WL 13469576, at *4 (E.D.N.Y. Jan. 14, 2020) (alteration in original) (quoting *S & L Birchwood, LLC v. LFC Cap., Inc.*, 752 F. Supp. 2d 280, 284 (E.D.N.Y. 2010)).  The party requesting the transfer bears the burden of making a "strong case for transfer." *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 114 (quoting *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989) (internal quotation marks omitted)).  Lastly, "[c]ourts have discretion when balancing these factors and no one factor is decisive." *Hobby Lobby Stores Inc. v. Obbink*, No. 21-CV-3113 (RPK) (MMH), 2023 WL 6214240, at *3 (E.D.N.Y. Sept. 23, 2023) (quoting *Erickson v. MGM Grand, Inc.*, No. 13-CV-0564 (NRB), 2014 WL 12774971, at *3 (S.D.N.Y. June 25, 2014)).

## DISCUSSION

### I.     The Existence of Changed Circumstances

As a preliminary matter, Defendants argue that Plaintiffs have failed to show a change in circumstances warranting transfer, and "that fact, in and of itself, counsels in favor of denying the request to transfer the case." (Defs.' Opp'n at 2–3.) While they acknowledge that the existence of a related case in a different court could warrant transfer in some circumstances, Defendants maintain that, in this instance, "there is nothing that recently occurred in *Babbitt* that would constitute a change of circumstances to justify transfer at this time," and that " [t]he mere existence of *Babbitt* is plainly insufficient to constitute a change in circumstances." (*Id.* at 4.) Defendants further accuse Plaintiffs of "[f]orum shopping" and having "filer's remorse," given that the *Babbitt* plaintiffs achieved a more favorable outcome than the *Jibowu* plaintiffs on conditional certification. (*Id.* at 6–7.) They assert that Plaintiffs should have met and conferred with

Defendants and notified them of their intention to potentially transfer the case back when the parties initially requested the stay of the proceedings. (*Id.* at 5–6.)

As Plaintiffs note, "[t]he Second Circuit has not ruled on, and courts in this Circuit disagree on, whether a plaintiff seeking to transfer venue must demonstrate a change in circumstances since filing the suit." *Hobby Lobby Stores Inc.*, 2023 WL 6214240 at *3; (Pls.' Reply at 7 n.5; *see also* Defs.' Opp'n at 3 n.1 (acknowledging that a few courts within the Second Circuit have excused a movant-plaintiff from demonstrating changed circumstances).) For some courts, absent such a showing, a "motion to transfer venue is not ordinarily granted at the request of the party who chose the forum in the first place." *Megna v. Biocomp Lab'ys Inc.*, 220 F. Supp. 3d 496, 498 (S.D.N.Y. 2016) (requiring plaintiff to show change in circumstances in motion to transfer venue); *see also, e.g.*, *Bakken Res., Inc. v. Edington*, No. 15-CV-8686 (ALC), 2019 WL 1437273, at *6 (S.D.N.Y. Mar. 29, 2019) (denying motion for transfer for failure to show, *inter alia*, sufficiently changed circumstances). For other courts, "even though a bona fide change in circumstances may be a sure sign that transfer of venue would be in the interests of justice, it does not augment or displace that essential inquiry." *Nat'l Experiential, LLC v. Nike, Inc.*, No. 12-CV-3197 (ENV) (SIL), 2021 WL 9678642, at *4 (E.D.N.Y. July 31, 2021); *see also United States ex rel. Smith v. Yale Univ.*, No. 02-CV-1205 (PCD), 2006 WL 1168446, at *2–3 (D. Conn. Apr. 28, 2006) (finding that, where transfer is "in the interest of justice," an action may be transferred even if plaintiff cannot show a change in circumstances); *Hobby Lobby Stores Inc.*, 2023 WL 6214240 at *4 (finding "that the interests of justice inquiry adequately subsumes consideration of any change in circumstances"); *Lihuan Wang v. Phoenix Satellite Television US, Inc.*, No. 13-CV-0218 (PKC), 2014 WL 116220, at *3 (S.D.N.Y. Jan. 13, 2014) (noting that a showing of changed circumstances is not "mandatory," as the court has "broad discretion in making determinations of convenience under

7

[28 U.S.C.] Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis") (internal quotation marks and citations omitted).

The Court agrees with those courts that have found no need for a showing of changed circumstances where the transfer is in the interest of justice. But even if such a requirement did exist, there is no doubt that such a showing would be satisfied in this case. In their reply brief, Plaintiffs contend that their motion to transfer was submitted at an appropriate point in this case because "*Babbit* . . . has [now] reached the exact same posture as this case was when it was stayed." (Pls.' Reply at 3; *id.* at 7 ("[I]t was precisely when both cases reached the same procedural point as to second-stage discovery that Plaintiffs, in June, informed Target that they believed the cases should be brought together.").) Moreover, Plaintiffs note that "[w]hen this case was stayed, *Babbitt* had just been conditionally certified and involved a few individuals. Now, it has become a 3,500 person collective in which the parties are engaged in the same second-stage discovery issues as this case with overlapping work regions, districts, [and] stores." (*Id.* at 7 n.5.) These are certainly "new" developments that have taken place since the filing of this suit in 2017. *See Fisher*, 204 F. Supp. 3d at 623 ("Courts assessing this threshold question in plaintiffs' motions to transfer have required plaintiffs to identify a new development that 'warrants transferring the action to the transferee forum.' . . . This change must have taken place since the filing of the suit." (quoting *Ferrostaal, Inc. v. Union Pac. R.R. Co.*, 109 F. Supp. 2d 146, 151 (S.D.N.Y. 2000))). Moreover, these are not examples of circumstances that existed at the time Plaintiffs chose this forum, nor are they developments that are only tangentially related to this case. *See Universal Marine Med. Supply, Inc. v. Lovecchio*, No. 98-CV-3495 (ILG), 1999 WL 441680, at *2 (E.D.N.Y. May 7, 1999) ("Examples of changes in circumstances warranting transfer include . . . the pendency of a related action filed by a plaintiff in the transferee district.") Thus, even if Plaintiffs did have a

burden to demonstrate a change in circumstances—which this Court believes they do not—that standard has been satisfied here.

## II.    Balancing Factor Analysis

Defendants only dispute six of the nine factors that courts typically weigh to determine whether the balance of convenience and justice favors transfer.[5] The Court considers each of these six factors in turn.

### 1.  The Convenience of Witnesses

Plaintiffs contend that in FLSA collective action cases such as this, where witnesses are "geographically disparate," convenience of witnesses is found "either at the corporate defendant's headquarters, or in no single venue because the relevant witnesses are most likely to be found disbursed [sic] and where the opt-ins worked." (Pls.' Mem. at 6.)  Defendants, in opposition, state that "the presence of a significant number of plaintiffs and their witnesses in New York weighs against transfer," and that "Plaintiffs offer no specific facts as to the identity of key witnesses and the nature of their anticipated testimony.  That itself is a reason to reject the transfer request." (Defs.' Opp'n at 9.)

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).  "In assessing whether to transfer this action, the Court notes the convenience of witnesses located outside of either this District or the [District of Minnesota] should be afforded little, if any, weight." *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 252 n.4 (E.D.N.Y. 2010); *see, e.g.*, *Elec. Workers Pension Fund, Loc. 103 v. Nuvelo, Inc.*,

---

[5] Defendants agree with Plaintiffs that the following factors are neutral: (1) the location of documents and relative ease of access to sources of proof, (2) the relative means of the parties, and (3) the weight accorded to Plaintiffs' choice of forum.  (*See* Defs.' Opp'n at 17–19.)

Nos. 07-CV-975 (HB), 07-CV-1229 (HB), 07-CV-1777 (HB), 07-CV-1953 (HB), 2007 WL 2068107, at *4 (S.D.N.Y. July 19, 2007) ("Typically . . . district courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum."). Moreover, courts "must do more than merely compare the number of witnesses who reside in the current forum to the number located in the proposed transferee forum, but should instead assess the materiality, nature and quality of the testimony that the witnesses are likely to provide." *Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009).

Here, Plaintiffs have identified several corporate witnesses who could offer material testimony as to the duties and titles of Target ETLs—a central issue in the case.[6] (Pls.' Reply at 8–9 n.6.) Plaintiffs claim that these individuals were responsible for ensuring that ETLs are properly classified under the FLSA, as well as for determining store policy, store operations, and ETL training materials. (*Id.*) Where a corporation's practices and policies constitute the heart of a claim, courts have favored transfer to the district where the corporate headquarters are located. *See Farrior v. George Weston Bakeries Distrib., Inc.*, No. 08-CV-2705 (JFB) (WDW), 2009 WL 113774, at *4–6 (E.D.N.Y. Jan. 15, 2009) (where FLSA collective action raised questions about defendant company's compensation policies and practices, transfer to district where defendant's headquarters were located was warranted because, *inter alia*, substantial aspects of those policies were developed by individuals at corporate headquarters); *Earley v. BJ's Wholesale*

---

[6] They include the potential testimony of: (1) Michael Brewer, Director-Employee Relations, regarding Target's compliance with state and federal wage-and-hour laws and annual ETL self-audits; (2) Tonya Lizakowski, former Director-Employee Relations, regarding Target's compliance with state and federal wage-and-hour laws; (3) Melissa Doll, Lead Business Partner, HR Planning & Delivery, regarding Target's compliance with state and federal wage-and-hour laws; (4) Laura Poling (f/k/a Hernandez), Lead Compensation Consultant, regarding Target's payment and calculation of ETL bonuses; and (5) Patti Koch, Senior Director Compensation, regarding Target's compensation of ETLs. (Pls.' Reply at 9 n.6.)

*Club, Inc.*, No. 06-CV-3529 (WHP), 2007 WL 1624757, at *2–3 (S.D.N.Y. June 4, 2007) (transfer of FLSA action to district where defendant's headquarters were located was appropriate where key issue in case was nature and implementation of company-wide overtime policies); *Rindfleisch*, 752 F. Supp. 2d at 256–57 (finding that the more critical and extensive testimony was likely to be provided by parties and witnesses residing in the transferee district, where the corporation was headquartered and its executives who set company-wide policies were based). This factor therefore weighs in favor of transfer.

### 2. The Convenience of the Parties

Courts generally find that this factor favors transfer "when transfer would increase convenience to the moving party without generally increasing inconvenience to the non-movant." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 29 (S.D.N.Y. 2016) (quoting *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014)). "Ordinarily, [this] factor becomes neutral when transfer would merely shift the inconvenience from the non-movant to the movant." *Penrose v. N.Y. Life Ins. Co.*, No. 22-CV-2184 (JPC), 2023 WL 6198249, at *5 (S.D.N.Y. Sept. 22, 2023). While it is true that eight of the Plaintiffs in this case live in New York and none live in Minnesota, Plaintiffs themselves assert that "[i]t seems almost superfluous to point out that it is *Plaintiffs* who are making this motion and hence are willing to bear any inconvenience." (Pls.' Reply at 8–9 (emphasis in original).) Because litigating in Minnesota would not shift any burden onto Defendants[7], and would not be inconvenient for Plaintiffs, the Court finds that this factor weighs in favor of transfer.

---

[7] For example, as Plaintiffs note, regardless of where the case is litigated, Defendants will have to depose Plaintiffs in New York. (*See* Pls.' Reply at 9 n.7.)

11

### 3. The Locus of Operative Facts

Although "in a nationwide FLSA action . . . it is often difficult to fix a single locus of operative facts, . . . courts have concluded that operative facts may be found at the locations where employees worked, notwithstanding allegations that a uniform corporate policy caused the FLSA violations." *Scalia v. KDE Equine, LLC*, No. 19-CV-3389 (KAM) (SJB), 2020 WL 4336395, at *6 (E.D.N.Y. July 28, 2020) (quoting *Flood v. Carlson Rests Inc.*, 94 F. Supp. 3d 572, 579 (S.D.N.Y. 2015)); *see also Bukhari v. Deloitte & Touche LLP*, No. 12-CV-4290 (PAE), 2012 WL 5904815, at *5 (S.D.N.Y. Nov. 26, 2012) ("[T]he locus of operative facts is the location of the alleged violations . . . not the corporate headquarters."). Here, there is no dispute that no Plaintiff worked in Minnesota and that eight Plaintiffs worked at stores in New York. (Pls.' Reply at 8.) This factor therefore weighs against transfer.

### 4. The Availability of Process to Compel Attendance of Unwilling Witnesses

Though, as noted previously, Plaintiffs have identified material corporate witnesses, they have not provided detailed information regarding any third-party witnesses, *e.g.*, where they currently live and whether they are still employed by Defendants. (Pls.' Mem. at 9; Pls.' Reply at 9 n.6.) Plaintiffs, however, note that since "Plaintiffs might wish to call unwilling corporate witnesses from Target's headquarters, the District of Minnesota would be favored." (Pls.' Mem. at 9.) But, as even Defendants acknowledge, "to the extent that Defendants' witnesses are current employees, Defendants presumably can compel their testimony without a subpoena." (Defs.' Opp'n at 16–17 (quoting *Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 580 (S.D.N.Y. 2015) (cleaned up)).)

Defendants argue that "if any third-party witnesses are unwilling to testify, they are far more likely to be former Target employees who worked with plaintiffs at stores outside of Minnesota. Transferring the case to Minnesota—more than 100 miles from the stores at issue—

12

would jeopardize a court's ability to compel their testimony." (Defs.' Opp'n at 17.) Plaintiffs respond that in a collective action such as this, most unwilling third-party witnesses are likely to be geographically scattered, rendering the reach of 100-mile radius for witness subpoenas the same for either court. (Pls.' Reply at 10.) Plaintiffs also question Target's ability to summon its former employees to testify on a voluntary basis if the case remains in this District, stating that "there is no guarantee that [Target] will be able to do so, for example, for the witnesses involved in the classification decision twenty or more years ago." (*Id.*) The Court finds that there is no demonstrated or predictable difference in the availability of process between the two districts and has no reason to believe that litigating the case in this District would be more or less burdensome than in the District of Minnesota with respect to issuing subpoenas. The Court thus concludes that this factor is neutral.

### 5. The Forum's Familiarity with Governing Law

"'Familiarity with the governing law is generally given little weight in federal courts.' . . . This is particularly true when the governing law is a federal statute like the FLSA, which is equally familiar to all federal courts." *Flood*, 94 F. Supp. 3d at 580 (quoting *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004)). When it comes to the state law claims present in this action, it is certainly the case that this Court, as a federal district court located in New York, has the most familiarity in applying the NYLL. In the past, courts have weighed this factor against transfer. *See, e.g.*, *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("[W]here there are state law claims, the forum's familiarity with governing law supports retention of the action") (internal quotation marks and citation omitted). But the NYLL is not the only state law violation alleged in this case—Plaintiff Jibowu also alleges violations of Illinois state law, namely the IMWL and the IWPCA. Thus, to the extent that state law claims from other states may arise in this case, "'federal courts are deemed capable

13

of applying the law of other states'" and "the 'governing law' factor is to be accorded little weight on a motion to transfer venue." *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 333 (E.D.N.Y. 2006) (quoting *Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97-CV-6308 (DC), 1998 WL 397889, at *6 (S.D.N.Y. July 16, 1998)) (cleaned up).  The Court thus considers this factor neutral.

### 6. Trial Efficiency and the Interest of Justice, Based on the Totality of Circumstances

When it comes to trial efficiency, "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Delta Air Lines, Inc. v. Ass'n of Flight Attendants, CWA*, 720 F. Supp. 2d 213, 219 (E.D.N.Y. 2010) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)).  Indeed, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy." *Brown v. New York*, 947 F. Supp. 2d 317, 325–26 (E.D.N.Y. 2013) (quoting *Williams v. City of New York*, No. 03-CV-5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006)) (cleaned up).

Here, Defendants emphasize that the "mere existence of related litigation," however, is not enough; what matters instead is "the degree of overlap between the [related] actions." (Defs.' Opp'n at 20.)  Though *Jibowu* and *Babbitt* allege the same FLSA misclassification claims against Target, Defendants point to the various ways the conditional collectives in the two cases do not overlap.  For example, broadly speaking, the *Babbitt* collective includes all "current and former [ETLs] . . . who worked for Defendants in the United States at any times on or after July 20, 2018," (Tomezsko Decl., Dkt. 190-25, ¶ 3), while the *Jibowu* collective includes only "current and former [ETLs] . . . employed . . . at the Target store locations within California, Illinois, New York, Ohio,

14

Oklahoma, Pennsylvania, and Texas . . . at any time from June 28, 2014 to the present," (*see* Summ. J. Mem. & Order, Dkt. 129, at 62). Defendants rely on *Scalia*—a case where the Court ultimately denied transfer when two related actions had different liability periods and only five overlapping plaintiffs—to argue that the same should happen in this case. (Defs.' Opp'n at 20); 2020 WL 4336395.

Defendants' reliance on *Scalia* is unavailing. In *Scalia*, the related case (pending in the Western District of Kentucky) was "already at an advanced stage" and concerned "different groups of employees who were allegedly underpaid at different times." 2020 WL 4336395, at *7. Here, though there currently is limited overlap between the time periods of the two collectives,[8] both cases are procedurally at the same point and concern employees who have essentially the same role within Target stores. A small amount of overlap between the liability periods of the two cases is not sufficient to outweigh the larger efficiencies that may be gained from having both cases before the same court. As Plaintiffs note, there are several other considerations supporting transfer of this case for the purposes of trial efficiency:

> Going forward the cases will proceed down the exact same path[.] [T]here will be extensive discovery of Target corporation itself, particularly and critically, as to Target's corporate-wide policies and practices and its corporate state of mind, including whether it acted willfully or with a reckless disregard for the FLSA . . . or

---

[8] The time period for the *Jibowu* collective extends from June 28, 2014 to June 28, 2019, which was "the present" for purposes of the Court's summary judgment decision. (Summ. J. Mem. & Order, Dkt. 129, at 56 ("However, the Court grants conditional certification of those ETLs in the proposed collective who were employed in the particular Target stores . . . even temporarily, from June 28, 2014, to June 28, 2019.").) In contrast, the *Babbitt* collective covers "any time on or after July 20, 2018." (Tomezsko Decl., Dkt. 190-25, ¶ 3.) Although the current overlap is a little less than one year, if this matter is transferred to the District of Minnesota and consolidated with the ongoing FLSA collective action there, it would seem that Plaintiffs could seek to expand the temporal scope of the collective with respect to the claims in this matter. In any event, as discussed *infra*, the limited overlap between the two collective actions is not a dispositive consideration with respect to the efficiency and interest-of-justice factor in this case.

15

> whether Target can show that it acted in "good faith" . . . .  This discovery will be identical for the two cases since Target's classification decision predates either case and is relevant and germane to Target's failure to take remedial measures to address the labor law violations that Target was committing, and which Target is alleged to continue to commit to this day.

(Pls.' Reply at 4–5.)

Defendants also argue that "there is significant discovery germane to *Jibowu* that is not relevant in *Babbitt*, and *vice versa*." (Defs.' Opp'n at 21.)  But the Court agrees with Plaintiffs that the "interest of justice" analysis only "require[s] that the cases be related, not identical." (Pls.' Reply at 2 (quoting *Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 550 (E.D.N.Y. 2012)) (internal citation omitted).).  Where, as here, allowing the two cases to proceed in different courts presents the very real risk of inconsistent rulings and judgments on the same issues, this factor weighs strongly in favor of transfer.  *See Zainfeld v. Vivid Seats, LLC*, No. 24-CV-1520 (DEH), 2024 WL 2274920, at *3 (S.D.N.Y. May 20, 2024) ("Having two courts deciding the same issue poses an obvious risk of inconsistent judgments, not to mention a waste of judicial resources. Judicial economy and the interests of consistency [thus] strongly favor a single judge deciding both actions.").

\*   \*   \*

Viewing the totality of circumstances, the interest of fairness and judicial efficiency militate strongly in favor of transfer. Accordingly, the Court finds that the balance of factors substantially outweighs Defendants' objections and that a discretionary transfer of venue is appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is granted. This case shall be transferred in its entirety to the District of Minnesota.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 12, 2024
   Brooklyn, New York